CRISTÓBAL MORALES, Plaintiff and Appellant, *v.* P. GONZÁLEZ & Co., *S. en C.,* ET AL., Defendants and Appellees.

No. 4617. Argued March 7, 1929.—Decided July 10, 1930.

*F. Soto Gras* for appellant.   *J. Martínez Dávila* for appellees.

MR. JUSTICE ALDREY delivered the opinion of the Court.

The appellant herein, Cristóbal Morales, was a salesman employed by P. González & Co., *S. en C.,* to sell flour on commission, computed as a percentage of the flour sold under a contract made by the parties. At the expiration of that contract, P. González & Co. rendered a statement of the commission account showing a balance in favor of Morales, who accepted the account as a whole but objected to six of the debit items entered therein and claimed that two credit items had been omitted. The firm did not agree to his claims and thereupon Morales filed his complaint, according to which the objected charges amounted to $668.15 and the two credit items claimed to have been omitted amounted to $2,358.53, with a balance in his favor of $2,787.

A judgment was rendered in which it was held that three of the six items alleged by the plaintiff to have been wrongfully debited, amounting to $349.17, must be stricken out, and that, as to the omitted items, only one amounting to $99.37 could be allowed. Accordingly, the sum of $247.18

received by the plaintiff after the rendition of the said statement of account was deducted and the defendant was adjudged to pay to the plaintiff the difference, or $201.31, without special imposition of costs.

The present appeal has been taken from that judgment by the plaintiff, who seeks a decision from us holding that the other three debit items amounting to $318.98 were also improperly charged and that he should be credited with the sum of $2,259.16, which had been disallowed by the judgment. The appellees did not appear at the hearing of the appeal.

The pertinent clauses of the contract of employment are substantially as follows: By the fifth clause it was agreed that any sale made by the firm to a customer directly or in any other manner through any employee or member of the firm would be governed, for the purposes of the commission accruing to Morales, by the stipulations set forth in the third paragraph, except as regards the districts of Ponce, Mayagüez, Guayama, Arecibo and Aguadilla, where the firm has commission agents and as to which Morales would not be entitled to any commission on any sale negotiated and procured personally by such agents; and excepting also any sales similarly made in the warehouses at San Juan and in the Island involving orders sent directly to the mill. It was stipulated in the ninth clause that the liquidation of commissions and excess prices (sobreprecios) was to be made as follows: (a) A partial liquidation shall be made of every shipment showing the amount of flour received and delivered to the customers, and Morales shall be credited (for the purposes of the accounting) a commission of fifty per cent of the profits realized, and he may dispose of the amounts representing his commission and the excess prices as soon as the customers have paid the corresponding invoices; (b) a general liquidation shall be made semiannually and a balance then struck between the accrued compensation and any sums received by Morales; (c) that on all flour bought for speculation Morales shall bear fifty per cent of the losses, if any,

except in those cases where the customer fails to pay, in which case Morales shall be exempt and shall only lose his commission and the excess price accruing to him on such sales.

The plaintiff and the defendants testified at the trial, but their testimony does not greatly affect the questions to be decided as it was stipulated by the parties that the memorandum sent by the plaintiff to the firm regarding said items and the written answer thereto from the firm should be considered as their testimony; and in reality those two documents contain few facts and much argument.

We will take up first the item of $80.31 which the appellant seeks to have stricken out. This charge represents a counter-entry, inasmuch as after the corresponding amount was credited to the appellant it was canceled by the entry of said item on the debit side of the account.

It is stated in the plaintiff's memorandum that said item represents earned commissions on flour sold to Salas & Co. of Mayagüez, and that there was no reason for cancelling it. The answer of the firm is that Salas & Co. are its agents in the district of Mayagüez and that they are entitled to the commission and excess price on the flour so sold, as it was they who made the sale and became entitled to the corresponding commission and excess price in accordance with clause 5 of the contract. The lower court dismissed the claim of the plaintiff as not having been sufficiently proved inasmuch as his statement that he had sold the flour to Salas & Co. is contradicted by the defendants, as appears from the evidence submitted.

We think that this conclusion of the trial court is correct, since according to the memoranda which serve as evidence, the statements of the parties on this point are conflicting. Futhermore, under the fifth clause of the contract the commissions which Morales was to receive did not apply in those districts where the firm had an agent, and Salas & Co. was such an agent in Mayagüez; and it does not seem reasonable

that Morales should have sold the flour to Salas & Co. when they were the firm's agents in that district.

Another debit item involved in this appeal is a charge for $42.50 against Morales appearing in the account. This amount represents one-half of the expenses incurred by the firm in returning to San Juan certain sacks of flour shipped to Padilla at Arroyo and which the consignee refused to accept.

Salesman Morales was bound under the contract to pay all his expenses; but we fail to find in the agreement any stipulation binding him to defray one-half of the expenses incurred in bringing to San Juan any flour that might happen to be rejected by a purchaser. Therefore, the item of $42.50 debited to him for one-half of the latter expenses is not justified.

The item of $196.17 charged to the appellant and which he seeks to have stricken out, and the item of $2,259.16 which he claims should be credited to him, are related to each other.

The firm had credited the account of Morales with the sum of $196.16 as his commission on the sale of some flour, which the mill in the United States failed to ship, and in order to cancel that credit his account was thereafter debited with the same amount. The sum of $2,259.16 is for commissions on flour sold by Morales, but not shipped from the mill either.

The defendants claim that Morales is not entitled to those commissions because the flour could not be delivered to the buyers and, therefore, there was no real sale. The appellant, on the contrary, maintains that he had made the sale and there is no clause in the contract under which he should be denied his commission.

It is true that the contract does not specifically provide for the case where the mill failed to ship any flour sold by the salesman and which, for that reason, could not be delivered to a purchaser. However, as it was stipulated in clause 9 A that Morales could dispose of his commissions as

soon as the purchaser made payment, and as it was stipulated in paragraph (c) of the same clause that where flour was purchased for speculation and the customers failed to pay the purchase price Morales should not receive any commission or excess price, to which he might otherwise be entitled, the conclusion is justified that it was the intention of the parties that the salesman would receive compensation provided the person who bought from him paid. This rule must be applied to those cases where such payments were not made because the flour was not delivered, due to the failure of the mill to ship it, even though the salesman did all that he had to do to complete a sale. On the other hand, it does not seem fair that the firm should pay a commission on flour which was not really sold and which could not be delivered through no fault of the firm. Therefore, the debit item of $196.17 can not properly be eliminated from the account, and the item of $2,259.16 should not be credited to the plaintiff.

In view of the conclusion we have reached, it is not necessary for us to pass upon the third ground of appeal in which it is urged that the defendants be adjudged to pay all the costs.

The judgment appealed from must be modified so as to adjudge the defendants to pay to the plaintiff the sum of $243.81, and as thus modified affirmed.